CITY BANK OF HONOLULU,
Plaintiff, Appellee,

v.

Artemio RIVERA DAVILA, Defendant,
Appellant.

Gerasimo Rodriguez, Defendant
(two cases).

Nos. 7432, 7447.

United States Court of Appeals,
First Circuit.

March 8, 1971.

F. J. Perez Almiroty, Santurce, P. R., for appellant.

Harry E. Woods, Santurce, P. R., with whom Baker & Woods, Santurce, P. R., was on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

McENTEE, Circuit Judge.

In 1964 the defendant, Artemio Rivera Davila (hereinafter Rivera), a resident of Puerto Rico, organized a Hawaiian corporation known as Aloha Aluminum Extrusion Corporation (Aloha). He was president and the majority stockholder of the corporation. The defendant, Gerasimo Rodriguez, also a

Puerto Rican, was vice-president and resident general manager. Soon after organization Aloha found itself in financial difficulties and applied to the Small Business Administration for a loan. The plaintiff, City Bank of Honolulu, agreed to participate in the loan, provided Rivera would personally endorse the notes. As he wished to return to Puerto Rico, Rivera gave Rodriguez a power of attorney on November 24, 1964, for the purpose of handling the SBA loan for him. Exercising that power in December 1964, Rodriguez executed a guaranty to the Bank which stated in part, "The liability of the guarantor will be limited at any one time to not more than $30,000." SBA rejected the loan application.

In March 1965 Rivera returned to Hawaii and, with Rodriguez, conferred with the Bank about obtaining loans for the corporation. The Bank replied that it would loan money to Aloha only if Rivera would personally guarantee payment by signing the notes. On March 16, 1965, at the Bank's request, Rivera gave Rodriguez a new power of attorney, general in scope, which superseded the limited one of the previous November. Between July 1 and November 2, 1965, Rodriguez guaranteed payment in Rivera's name on six of Aloha's notes to the Bank, totalling some $67,000. After Aloha defaulted on the notes, Rivera revoked his power of attorney and the Bank made demand on Rivera personally to pay the notes.

There was evidence at the trial that in January and again in November of 1966 Rivera acknowledged that he owed the money and promised to pay the notes but requested time in which to do so. It also appeared that the Bank agreed to accept extended payments with interest and, when Rivera failed to pay as promised, brought this diversity suit against him. The jury found for the Bank against Rivera[1] in the full amount claimed—$63,654.98. After entering judgment, the court assessed costs of $6,375.16 against Rivera and ordered him to pay attorneys' fees of $15,000 for obstinacy as authorized by Puerto Rican law.[2]

On appeal, Rivera contends that the trial court erred in admitting testimony concerning certain conferences between the Bank and Rivera in which the latter admitted liability on the notes. At one point in the trial, testimony concerning these admissions went in without objection. Rivera did object, however, when plaintiff's witness Kobayashi, an official of the Bank, was asked whether Rivera had offered to pay off the notes and objected when plaintiff's counsel Woods, who had taken the stand, was asked the same question. The court overruled these objections and the answer of both witnesses was in the affirmative. Rivera's objection was that his offer was in compromise and hence inadmissible. He also objected that the Bank's attorney could not testify as to the subject matter of the conference. Given that Rivera requested only an extension of time and agreed to make full payment with 8% interest per annum, the court properly viewed the offer as an admission rather than an offer in compromise. Fed.R.Civ.P. 43; 4 Wigmore, Evidence § 1061 (3d ed. 1940) cited in People v. Ruiz, 83 P.R.R. 337, 342 (1961). *Compare* Gibson v. Whitton, 239 N.C. 11, 16, 79 S.E.2d 196, 200 (1953), *with* Perez v. Guanica Centrale, 17 P.R.R. 927, 933–934 (1911). And it is well settled that an attorney is competent to testify on behalf of his client. *E. g.*, Lau Ah Yew v. Dulles, 257 F.2d 744,

---

1. In his answer to the original complaint, Rivera denied that Rodriguez had authority to endorse the notes in Rivera's name and the Bank then amended its complaint joining Rodriguez as a codefendant.

2. It was correctly assumed by the district court that Hawaiian law applied on substantive issues. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); Ponce v. F. Bedrena e Hijos, Inc., 74 P.R.R. 210, 235–36 (1952); *cf.* Maryland Casualty Co. v. San Juan Racing Ass'n, 83 P.R.R. 538 (1961).

746 (9th Cir. 1958); cf. Lugo v. Ferrer, 85 P.R.R. 832, 839–841 (1962); People v. Rodriguez, 66 P.R.R. 302, 310 (1946).

Rivera objected to the admission in evidence of one of the six notes on the ground that only Rodriguez signed for Aloha, whereas on the other five the name of Bolduc, Aloha's treasurer, also appeared. Even if the lack of Bolduc's signature made this note *ultra vires* with respect to Aloha, Rivera remained personally liable under the terms of the note and the note was therefore admissible against him, because Rodriguez had signed it separately as his attorney in fact.

On cross-examination, Bank official Kobayashi testified that five of the six notes were issued for "working capital" for Aloha and, after examining a loan application signed by Rodriguez, stated that the sixth note was used to consolidate other loans not in evidence in this case. The court sustained the Bank's objection that further inquiry as to the purpose of this sixth note was immaterial. Rivera argued that he was trying to determine whether Rodriguez had applied for a loan for an unauthorized purpose and whether the Bank knew this from the application. Assuming that the Bank knew that this sixth note was to pay debts that were not Aloha's, it could still have reasonably believed that Aloha had sound business reasons for assuming them. Since this line of inquiry was limited to the Bank's knowledge of matters in the application, this inquiry could have uncovered nothing relevant. In any event, the Bank knew that Rodriguez had a broad power of attorney from Rivera, and, even if the loan were not beneficial to Aloha, this did not mean it was not in Rivera's interest.

Rivera claims that certain letters he wrote to Rodriguez showed that he intended the second power of attorney to be subject to the same $30,000 limitation contained in the guaranty executed by Rodriguez under the first power of attorney. The court refused to admit these letters. As it correctly charged the jury, "any private limitations on the power of attorney not communicated to the City Bank are not effective and are not binding upon City Bank." Corstorphine v. Bishop National Bank of Hawaii at Honolulu, 33 Haw. 315, 329 (1935); Caplan v. Hoffschlaeger & Stapenhorst, 2 Haw. 691, 695 (1863). Since Rivera never offered to show that the Bank had any knowledge of these letters, they were properly rejected.

Rivera claims error in the striking of eight of his affirmative defenses. The short answer to this contention is that we find nothing in the record to support those defenses that were stricken. Nor was there any error in the court's refusal to give six of Rivera's requests for instructions. The three dealing with conspiracy were unnecessary, there being no evidence of conspiracy. A fourth one would have allowed the jury to speculate on limitations on Rodriguez's authority,[3] and the fifth contradicted the court's obviously correct instruction that the written power of attorney authorized Rodriguez to sign the notes for Rivera. The last request would have limited Rivera's liability to the $30,000 stated in the first guaranty, but the evidence concerning this guaranty was in conflict, and to give Rivera's instruction would have been to direct a resolution of the issue in his favor. Finally, Rivera objected to the instruction on apparent authority. Assuming *arguendo* that the instruction

---

3. The request would have relieved Rivera of liability if the Bank should have known that Rodriguez was acting improperly. The instructions given properly limited the jury to consideration of what the Bank actually knew of Rodriguez's authority. The evidence presented the issue of whether the Bank had been told that the power of attorney was limited. Apart from such disputed communications, the remaining evidence was insufficient to permit a jury finding that the Bank should have known that Rivera had limited the power of attorney.

should not have been given, Rivera was not harmed by it. If the jury found apparent authority, then it must have believed that the Bank was reasonable in thinking that Rodriguez had authority to sign the notes. In so believing, the jury necessarily concluded that the Bank knew of no facts which limited the written power of attorney.

We have in mind the fact that powers of attorney are often construed more narrowly than their broad, general language might suggest. Nevertheless, upon examination of the record, particularly the evidence of Rivera's admissions of liability for the loans on at least two occasions, we think there was ample evidence to support the jury's verdict in favor of the Bank.

Turning now to the issue of the court's award of $15,000 in attorneys' fees against Rivera on grounds of obstinacy, we think the record clearly demonstrates Rivera's continued obstinacy throughout the trial. He greatly and unnecessarily prolonged the trial by injecting irrelevancies, by refusing to admit facts patently true, and by making statements and later contradicting himself. In our opinion this furnished ample basis for awarding the attorneys' fees in question, the amount of which, under the circumstances, was not unreasonable. Fireman's Fund Insurance Co. v. Santoro, 376 F.2d 157, 160 (1st Cir. 1967); Pan American World Airways, Inc. v. Ramos, 357 F.2d 341, 342 (1st Cir. 1966).

Since the costs of $6,375.16 were determined by the court and not by the jury, we consider them to have been assessed not under the provisions in the notes but rather under Fed.R.Civ.P. 54(d). *Cf.* Vaughan v. Atkinson, 369 U.S. 527, 530, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962). Given the fact that Rodriguez was joined as a defendant only because Rivera denied that he had authority to bind him on the notes, together with the fact that the jury exonerated Rodriguez,

we do not think there was an abuse of discretion in taxing costs against Rivera and not against Rodriguez. The costs, however, are limited to those items authorized by statute. *Compare* Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 719–720, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967), with Mills v. Electric Auto-Lite Co., 396 U.S. 375, 390–397, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). We do not think that the travelling expenses of attorney Kamo to Kobayashi's deposition in Puerto Rico were taxable to Rivera; Kamo attended the taking of the deposition as an attorney, not as a witness. Kiefel v. Las Vegas Hacienda, Inc., 404 F.2d 1163, 1170 (7th Cir. 1968), cert. denied, 395 U.S. 908, 89 S. Ct. 1750, 23 L.Ed.2d 221 (1969); *see generally* Farmer v. Arabian American Oil Co., 379 U.S. 227, 235, 85 S.Ct. 411, 13 L.Ed.2d 248 (1964). Likewise, we do not see how attorney Woods' trip to Hawaii comes within 28 U.S.C. § 1920 as "costs." *See Farmer, supra,* 379 U.S. at 235, 85 S.Ct. 411. As for the travelling expenses of attorney Kamo in coming to the trial, if the court viewed him as a witness, then it was within its discretion to allow travelling expenses, even though Kamo did not testify. United States v. Lynd, 334 F.2d 13, 16–17 (5th Cir. 1964). However, since the court did not allow hotel expenses for Kamo whereas it did allow them for witness Kobayashi, we believe that it may have viewed Kamo solely as co-counsel. In that event, Kamo's expenses should not have been allowed. Also, charges for long distance telephone calls, cables, taxi and messenger fare, and travelling and lodging (Item No. 12) should not have been allowed unless they were directly related to costs taxable under the statute. All other allowances for costs appear to be well within the court's discretion.

In No. 7432 the judgment of the district court entered on July 9, 1969, is affirmed. In No. 7447 that part of the order of the district court entered on September 29, 1969, that awards attorneys' fees in the amount of $15,000 is affirmed, and that part of said order that

awards costs of $6,375.16 is vacated and the case is remanded for further proceedings with respect to said costs in conformity with this opinion.