Faithy DOWDELL, Bobby Ann Barnes, Willie L. Nelson (Freeman), Eddie Lee Wynn, Lafayette Dowdell, Johnnie Bridges, Freddie L. Howard, et al., on behalf of themselves and all others similarly situated, Plaintiffs,

v.

CITY OF APOPKA, FLORIDA; John H. Land, Mayor of the City of Apopka, Florida; Alonzo Williams, Jr., Richard Mark, Bill Aerosmith, and Jeanette Robinson, Council members of the City of Apopka, Florida, their successors and agents, in their official capacity, Defendants.

No. 78–47–Civ–Oc.

United States District Court,
M. D. Florida,
Ocala Division.

Aug. 27, 1981.

David M. Lipman, Miami, Fla., Rosalind Gray, Washington, D. C., for plaintiffs.

Johnie A. McLeod, Apopka, Fla., for defendants.

CHARLES R. SCOTT, District Judge.

## OPINION

This cause came on for hearing July 27, 1981, to consider the motion of plaintiffs for an award of attorneys' fees and costs.[1]

Plaintiffs, a class of black residents of the City of Apopka, Florida, commenced this action against the above-named defendants seeking injunctive relief to remedy the effects of alleged discrimination in the provision of municipal services to inhabitants of the City of Apopka. The claims were grounded in the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, and the State and Local Fiscal Assistance Act of 1972 (hereinafter the "Revenue Sharing Act"), 31 U.S.C. § 1221 et seq.

Following a trial on the merits, the Court entered its judgment of April 22, 1981. 511 F.Supp. 1375. Plaintiffs were afforded substantial relief as to their claims pertaining to street paving and maintenance, storm water drainage facilities and water distribution. The defendants were enjoined from providing municipal services in a racially-discriminatory manner. Defendants were further enjoined from initiating any new municipal services or constructing any new municipal service facilities in the white residential community until such time as the street paving and maintenance, storm

---

1. Attorney's fees are sought under 42 U.S.C. § 1988, as well as under 31 U.S.C. § 1244(e) of the State and Local Fiscal Assistance Act of 1972. Title 42 U.S.C. § 1988 provides for an award of fees to the prevailing party in, *inter alia*, an action to enforce the provisions of Title VI of the Civil Rights Act of 1964. Title 31 U.S.C. § 1244(e) provides for an award of attorney's fees to the prevailing party, other than the United States, in any action to enforce § 1242(a) of the Revenue Sharing Act.

The Court of Appeals for the Second Circuit has determined that 31 U.S.C. § 1244(e) "mirrors other civil rights fee-shifting provisions such as 42 U.S.C. § 1988 ...." *Cohen v. West Haven Board of Police Commissioners*, 638 F.2d 496, 505 n.15 (2d Cir. 1980). This Court is in agreement and sees no reason to apply different standards in calculating a fee award under 31 U.S.C. § 1244(e) than it would in calculating an award under 42 U.S.C. § 1988.

water drainage facilities, and water distribution system in the black community reached a par with similar services and facilities currently available in the white community. Finally, pursuant to 31 U.S.C. § 1244(b) of the Revenue Sharing Act, the Court impounded all federal revenue sharing funds then under the control of the City of Apopka and all such funds to be received in the future. The Court directed that federal revenue sharing funds could be used only for capital expenditures to improve the quantity and quality of municipal services in the black community.

The Court found no statutory or constitutional violations with regard to the plaintiffs' claims relating to the provision of sewage facilities and park and recreational facilities. Consequently, these claims were dismissed with prejudice.

Defendants filed their notice of appeal of the Court's judgment on July 9, 1981, following a denial of their motion to amend the Court's findings of fact and conclusions of law. Although further proceedings will be necessary to consider the precise details of the remedial action to be taken by defendants, it is clear that we have progressed to the point where it is proper to consider the question of attorneys' fees and costs.

The Court will proceed to consider each of the factors set forth in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974). The law of this circuit is that, although an award of attorney's fees is within the discretion of the trial court, the trial court is required to make express findings

in the record as to the basis for the award and the particular factors in *Johnson* that the court relied upon. *Gay v. Board of Trustees of San Jacinto College*, 608 F.2d 127, 128 (5th Cir. 1979); *Morrow v. Dillard*, 580 F.2d 1284, 1301 (5th Cir. 1978); *Fain v. Caddo Parish Police Jury*, 564 F.2d 707, 709 (5th Cir. 1977).

(1) *The Time and Labor Required.*

(5) *The Customary Fee.*

The Court deems it appropriate to consider these two factors together in order to derive a "lodestar" figure which can then be adjusted through application of the other factors set forth in *Johnson*. It is apparent that, although not expressly stated, most courts within this circuit have employed the lodestar formula in calculating attorney's fees awards. *A. Miller, Attorneys' Fees in Class Actions, A Report to the Federal Judicial Center*, at 122 (1980). Even the Fifth Circuit Court of Appeals has tacitly approved the method of deriving an initial lodestar figure and then adjusting it in light of the remaining *Johnson* factors. *See, e. g., Wolf v. Frank*, 555 F.2d 1213 (5th Cir. 1977) (court approved 33.3 percent increase of foundation figure calculated on time-rate basis due to contingent nature of case and substantial relief obtained.) [2]

The lodestar method of calculating attorney's fees awards in class actions was first employed by the Third Circuit Court of Appeals in *Lindy Brothers v. American Radiators & Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir. 1973) (*Lindy I*).[3] This ap-

---

**2.** *But see Foster v. Boise-Cascade, Inc.*, 577 F.2d 335 (5th Cir. 1978) (Vance, dissenting in part). Judge Vance expressed his dissatisfaction with basing attorney's fees on a time-rate calculation.

This method of compensation—which equates professional services to those of laborers and mechanics—frequently has little or no relationship to the value of the services performed in anything but the most routine work. A flash of brilliance by a trial lawyer may be worth far more to his clients than hours or days of plodding effort.

*Id.* at 337 n. 1.

Although the wisdom of the last statement quoted above cannot be doubted, it is obvious that measuring and divining the value of

flashes of brilliance would require abilities far beyond those of most district judges. Perhaps acknowledging this fact, Judge Vance concluded his note of disenchantment with the concession that: "Notwithstanding its limitations, I am reconciled to the reality that the hourly rate approach will remain with us and is properly considered in the search for compensation that is reasonable." *Id.*

**3.** The *Lindy* rationale has been adopted by the Courts of Appeals for the Second and Eighth Circuits. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974); *Grunin v. International House of Pancakes*, 513 F.2d 114 (8th Cir.), *cert. denied*, 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975).

proach placed primary emphasis on the actual hours expended by the attorney on the case. It constituted a marked departure from prior decisions which focused upon the amount of recovery on behalf of the class and based attorney's fees on a percentage of that recovery.

In *Lindy I*, the Third Circuit held that the most important factors in calculating fee awards were the number of hours worked by the attorneys and the reasonable hourly rate that should be recovered for their services.[4] Multiplying the number of hours by the reasonable hourly rate provides the court with the lodestar, the foundational figure upon which to base the attorney's fees award. The Third Circuit then identified two factors that the court should consider in adjusting the lodestar figure either up or down. First, the court should consider the *contingent nature* of the case, that is to say, the risk incurred by the attorney in accepting the case. Second, the court should consider the *quality* of the attorney's work product and performance. While recognizing that the lodestar concept has never been expressly adopted by the Fifth Circuit Court of Appeals, this Court is of the opinion that it is a sensible approach, one that can be easily incorporated into a consideration of the 12 factors enumerated in *Johnson*.

Turning then to the first factor, the time and labor required, the Court has no doubt that counsel and co-counsel for plaintiffs expended substantial amounts of time and labor in preparing for and prosecuting the plaintiffs' case. Indeed, the 10 full volumes of court documents filed by the parties attest to this fact. Defendants have fiercely contested this litigation at every step of the proceedings. Defendants' opposition to the pre-trial discovery efforts on plaintiffs' behalf necessitated frequent intervention by the Court.

The affidavits filed by counsel and co-counsel for plaintiffs, Mr. David M. Lipman and Ms. Rosalind Gray, respectively, set forth the following numbers of hours spent in preparing for and prosecuting this case:

| Attorney | | Total Hours |
|---|---|---|
| David M. Lipman | | |
| a) In-court | 72.0 | |
| b) Out-of-court | 1140.45 | 1212.45 |
| Rosalind Gray | | 234.3 |

The Court finds these numbers to be reasonable in light of the complex and sweeping nature of the claims that were at issue. The sworn affidavits of Lipman and Gray specify relatively precise amounts of time, accompanied by the date on which the work was performed and the type of work involved.

■ Defendants' contention that plaintiffs are not entitled to attorneys' fees for hours spent on matters upon which plaintiffs were not the prevailing parties must fail. Plaintiffs obtained relief as to five of the seven areas of municipal services upon which the complaint was founded. Settlement was reached prior to trial as to the claims involving street lights and fire protection. There can be no doubt that plaintiffs who obtain relief through settlement are nevertheless prevailing parties within the meaning of 42 U.S.C. § 1988. *Gagne v. Maher*, 448 U.S. 122, 129–131, 100 S.Ct. 2570, 2575, 65 L.Ed.2d 653 (1980); *Collins v. Thomas*, (5 Cir., 1981) 649 F.2d 1203.

Of the five claims that went to trial, plaintiffs prevailed on three (streets, water distribution, storm water drainage). Plaintiffs lost on their claims relating to sewerage and recreational facilities. Nevertheless, plaintiffs' attorneys are entitled to compensation "for all time reasonably expended on a matter." *S.Rep.*No.94–1011, 94th Cong., 2d Sess. 6, *reprinted in* [1976] *U.S.Code Cong. and Ad.News* 5908, 5913. Only if the issues upon which the plaintiffs

---

4. Perhaps the most compelling support for calculating attorney's fees on a time-rate basis is found in the legislative history of 42 U.S.C. § 1988, which provides:

In computing the fee, counsel for prevailing parties should be paid, as is traditional with attorneys compensated by a fee-paying client, 'for all time reasonably expended on a matter.'
*S.Rep.*No.94–1011, 94th Cong., 2d Sess. 6, *reprinted in* [1976] *U.S.Code Cong. and Ad.News* 5908, 5913.

lost were clearly meritless should a court automatically preclude the hours spent on such issues. *Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981) (*en banc*); *see Stanford Daily v. Zurcher*, 64 F.R.D. 680, 683 (N.D.Cal.1974).

In *Jones v. Diamond, supra*, the Fifth Circuit, sitting *en banc*, considered this question, stating:

> In fixing the fee, the district court should be mindful that in complex civil rights litigation . . . issues are overlapping and intertwined. In order to represent their clients adequately, attorneys must explore fully every aspect of the case, develop all of the evidence and present it to the court. Time spent pursuing unsuccessful claims that were clearly without merit should be excluded. However, the mere fact that the litigants did not succeed in obtaining a judgment on all of the claims asserted does not mean that time spent pursuing these claims should automatically be disallowed. [citing cases] Instead the court must consider the relationship of the claims that resulted in judgment with the claims that were rejected and the contribution if any, made to success by the investigation and prosecution of the entire case. *Id.* at 1382.

In the instant case, plaintiffs' claims, although distinct in the sense that the claims related to different types of services, were intertwined in that they constituted logical, integrated parts of a single action challenging discrimination in the provision of municipal services. None of the claims were clearly meritless. Conditioning an award of attorney's fees upon the ability of the attorney to portend the ultimate outcome of the case could result in many meritorious claims never being prosecuted. Attorneys representing plaintiffs in a class action should not be required to choose between raising only those claims on which success is assured or risk having to forego compensation for their services. *Stanford Daily v. Zurcher, supra*, at 683.

Consequently, considering the substantial relief obtained by counsel for plaintiffs on behalf of the class, the Court is of the opinion that Mr. Lipman and Ms. Gray are entitled to compensation for all hours spent on the case.[5]

Together with the number of hours spent on the case, the customary fee charged by attorneys for similar work constitutes the fundamental ingredient in arriving at a base fee award. *Johnson, supra*, at 718. In this regard, both sides have submitted affidavits as to what constitutes a reasonable and customary fee for the work performed by counsel and co-counsel for plaintiffs. Affiants for plaintiffs suggested the following hourly rates as reflecting a reasonable and customary fee:

| Attorney | Recommended Hourly Fee |
| --- | --- |
| Roderick N. Petry | $ 125 for Lipman |
|  | $ 100 for Gray |
| William J. Sheppard | $ 125 for Lipman (in-court work) |
|  | $ 100 for Lipman (out-of-court work) |
| Chesterfield Smith | $ 125 for Lipman (in-court work) |
|  | $ 100 for Lipman (out-of-court work) |

The affidavits submitted by defendants were actually copies of affidavits submitted by counsel for plaintiffs in *Apopka Improvement Association v. City of Apopka*, No. 79–539–Orl–Civ–R, an unrelated civil rights case. The weight to be attached to these affidavits is questionable in that they were prepared without reference to the instant case. Nevertheless, because they purportedly represent the customary fee charged by attorneys experienced in civil rights litigation in the Middle District of Florida, the Court will consider them:

| Attorney | Requested Hourly Fee |
| --- | --- |
| Bruce S. Gelber | $ 70 (legal work) |
|  | $ 40 (non-legal work) |
| Luis Garcia | $ 70 (legal work) |
|  | $ 40 (non-legal work) |
| Martin E. Sloan | $ 95 |

5. The Court is not oblivious to the fact that attorney's fees are technically awarded to the prevailing parties rather than to their attorneys. Nevertheless, in the instant case, counsel represented a mostly indigent class, on a contingency fee basis, in an action seeking injunctive relief only. Given such circumstances, principles of convenience and practicality justify characterizing the attorneys' fees awards as recoveries on behalf of the attorneys themselves rather than on behalf of their clients.

■ Based upon the affidavits submitted by the respective parties, the fact that Mr. Lipman is an experienced civil rights litigator, and the Court's familiarity with civil rights litigation and attorney's fees generally, the Court is of the opinion that a reasonable hourly fee for Mr. Lipman would be $80 for in-court work and $60 for out-of-court work.[6] While recognizing that Mr. Lipman is a highly skilled attorney, the Court believes his requested hourly fee of $125 for in-court work and $100 for out-of-court work is excessive. This determination is based in part upon the fact that a portion of the work performed by Mr. Lipman could have been performed by a non-lawyer at a lesser expense.

■ As for Ms. Gray, her primary contribution to the plaintiffs' case, as evidenced by the schedule of hours she submitted to the Court, involved background work and the preparation of discovery materials. She is less experienced than Mr. Lipman and the work she performed did not involve any particularly high degree of skill. Ms. Gray suggests that her compensation be fixed at $100 per hour. The Court is of the opinion that $40 per hour would be a reasonable fee for Ms. Gray.

The Court has determined the number of hours spent on this case by counsel and co-counsel for plaintiffs as well as the reasonable hourly fee due to each attorney. The next step is to calculate the lodestar:

**Lipman**

| | |
|---|---|
| In-court work: | 72.0 hours x $80 per hour = $ 5,760 |
| Out-of-court work: | 1140.45 hours x $60 per hour = $68,427 |
| TOTAL | $74,187 |

**Gray**

| | |
|---|---|
| Out-of-court work: | 234.3 hours x $40 per hour = $9,372 |

Having determined the base awards due to Mr. Lipman and Ms. Gray, the Court will consider whether an adjustment of the base awards is justified in light of the remaining *Johnson* factors. As noted, in *Lindy I, supra*, the Third Circuit instructed the lower court to consider only two factors in adjusting the lodestar figure—the quality of the

attorney's performance and the contingent nature of the case. There is no question that certain of the *Johnson* factors are entitled to more weight than others in calculating a fee award. In addition to the two already discussed, i. e., the time required and customary fee, the district courts in this circuit have been directed to pay special heed to: (8) the amount involved and the results obtained; and (9) the experience, reputation and ability of counsel. *Cooper Liquor, Inc. v. Adolph Coors Co.*, 624 F.2d 575, 583 (5th Cir. 1980). These factors go toward the *quality* of the representation.

The Fifth Circuit has also recognized that lawyers who accept civil rights cases on a contingency fee basis "are entitled to be paid more when successful than those who are assured of compensation regardless of result." *Jones v. Diamond*, 636 F.2d 1364, 1382 (5th Cir. 1981) (*en banc*). Thus, the law of this circuit parallels the law of the Third Circuit in that it supports the proposition that base fee awards can be augmented if such an increase is justified by contingency and/or quality factors. By one view, this is merely stating what is already known; that all of the *Johnson* factors, not simply the ones discussed above, impact upon a court's calculation of attorney's fees. The difference, however, lies in the methodology employed in applying the *Johnson* factors. By using the lodestar method, that is to say, by using the *Johnson* factors of time and customary fee to establish a foundational figure, a court is able to achieve a more precise formulation than by considering the 12 factors as a hodge-podge. Time spent multiplied by a reasonable hourly rate provides an objective, if not perfect, base award. Using this as a starting point, the court can then use its discretion in applying the more subjective factors. Of the remaining factors, it appears proper and, under the law of this circuit, permissible to give special emphasis to those factors relating to the quality of the attorneys' repre-

---

**6.** Factor number (12) set forth in *Johnson* directs the court to consider fee awards in similar cases in arriving at an attorney's fees award. The Court's consideration of the affidavits submitted by the parties as well as the Court's general familiarity with attorney's fees awards in civil rights class actions is intended to satisfy its duty in this regard.

sentation and the contingent nature of the case.

    (3) *The Skill Requisite to Perform the Legal Service Properly.*

      (6) *Whether the Fee is Fixed or Contingent.*

      (8) *The Amount Involved and the Result Obtained.*

      (9) *The Experience, Reputation, and Ability of the Attorneys.*

Numbers (3), (8), and (9) relate to the quality of the attorneys' representation while number (6) obviously goes toward the contingent nature of the case.

      a) *Quality Factors*

The Court finds that Mr. Lipman is a highly-skilled attorney who has consistently produced a high-quality work product throughout the course of this litigation. His research both as to factual and legal matters has been thorough and meticulous. His legal arguments, as evidenced by the results he obtained for his clients, were sound. He is extremely experienced in the areas of law relevant to this cause. The benefits he obtained for the black residents of the City of Apopka were substantial.

As for Ms. Gray, the Court did not have an opportunity to view her in court and is unaware of the extent to which her work contributed to the high quality of plaintiffs' legal representation.

      b) *Contingency Factor*

■ Mr. Lipman has dedicated more than 1,200 hours to this cause, spanning a period of three years. Until the Court's judgment was entered on April 22, 1981, Mr. Lipman had no indication of whether those 1,200 hours were spent for naught. In addition to the uncertainty of not knowing whether he would ever receive any payment for his services at all, Mr. Lipman was faced with the absolute certainty that any fee award he would receive would be delayed for several years. The delay in receiving payment, in addition to the uncertainty of receiving any payment whatsoever, is a factor properly considered in setting an attorney's fee award. *Aamco Automatic Transmissions,*

*Inc. v. Tayloe,* 82 F.R.D. 405 (E.D.Pa.1979); *Knutson v. Daily Review, Inc.,* 479 F.Supp. 1263 (N.D.Cal.1979). This is not a factor separate and distinct from those set forth in *Johnson.* It is merely an adjunct of the contingency factor.

The risk and delay factors are equally applicable to a consideration of Ms. Gray's fee.

■ Based upon the *Johnson* factors discussed above, i. e., those relating to quality and contingency, the Court is of the opinion that Mr. Lipman's base fee award of $74,-187.00 should be augmented by 15 percent, resulting in a total fee award of $85,315.05. As for Ms. Gray, the Court has already noted that it has never had the opportunity to observe her in court or to observe any work product that was clearly identifiable as her own. She did not attend the evidentiary hearing on her motion for attorney's fees. Thus, the Court lacks any real foundation for augmenting her base fee award on the basis of quality factors. Due to the applicability of the contingency considerations, however, the Court is of the opinion that Ms. Gray's base fee award of $9,372.00 should be increased by 7.5 percent, resulting in a total fee award of $10,074.90.

    (2) *The novelty and difficulty of the questions.*

    (4) *The preclusion of other employment by the attorney.*

    (7) *Time limitations imposed by the client or the circumstances.*

    (10) *The undesirability of the case.*

    (11) *The nature and length of the professional relationship with the client.*

Whereas the quality and contingency factors will be critical considerations in virtually every civil rights class action, the remaining *Johnson* factors, set forth above, may or may not be important depending on the facts of the case. Given a particular set of facts, one or more of these remaining factors may justify a further augmentation of the base fee award. In the instant case,

none of these factors hold particular significance. The case did not raise novel or difficult questions of law. Although it was somewhat factually complex, it is unlikely that such complexity created any difficulties for Mr. Lipman or Ms. Gray, both of whom specialize in this type of litigation. Indeed, Mr. Lipman is currently engaged in several cases throughout the State of Florida that are carbon copies of the case *sub judice.*

In this light, it is apparent that, although the instant case consumed a great deal of Mr. Lipman's time over a three year period, the acceptance of the case did not preclude him from accepting other employment nor did it impose any severe time limitations upon him. Mr. Lipman's municipal service cases require years to litigate to completion. They do not impose the type of day-to-day time constraints often found in more diversified law practices. As one of these cases approaches the point of fruition, 10 more may be at the stage of conception. They overlap and, hence, do not require the attorney to refuse other employment due to time constraints. Moreover, because each case focuses on the alleged discriminatory practices of separate, isolated, rural communities, they do not give rise to any conflicts of interest that would preclude the acceptance of other employment.

Nor was this case "undesirable" from the point of view of Mr. Lipman or Ms. Gray. While it is unlikely that either of these attorneys would win a popularity contest in the City of Apopka, the fact that Mr. Lipman resides in Miami, Florida, and Ms. Gray resides in Washington, D. C., eliminates any adverse effect, economic or otherwise, that might otherwise have resulted from their acceptance of the case.

Finally, the *Johnson* factor pertaining to the nature and length of the professional relationship with the client is not applicable to this case. The plaintiffs herein became Mr. Lipman's clients only as a result of their claims against the City of Apopka. Their attorney-client relationship will in all likelihood terminate at the conclusion of this litigation.

## Costs

Plaintiffs have also moved the Court for an award of costs in the amount of $29,-639.29. The defendants object to this motion in general terms, primarily upon the ground that the costs are "excessive." They further object to any award of costs connected with issues upon which the plaintiffs were not the prevailing parties.

Costs are generally recoverable by the prevailing party in a civil action. *Fed. R.Civ.P.* 54(d). It is not necessary that a party prevail on *all* issues in order to have costs taxed against the other side. A party will usually be regarded as the prevailing party under Rule 54(d) even though he has obtained only a portion of the relief sought. *Jones v. Diamond,* 594 F.2d 997, 1028 (5th Cir. 1979), *reheard en banc,* 636 F.2d 1364 (5th Cir. 1981); *United States v. Mitchell,* 580 F.2d 789 (5th Cir. 1978); *see generally C. Wright & A. Miller, Federal Practice and Procedure* § 2667 (1973) (hereinafter 'Wright & Miller').

The allowance of costs is a matter left largely within the discretion of the trial court. *Farmer v. Arabian American Oil Co.,* 379 U.S. 227, 85 S.Ct. 411, 13 L.Ed.2d 248 (1964); *Kinnear-Weed Corp. v. Humble Oil & Refining Co.,* 441 F.2d 631 (5th Cir.), *cert. denied,* 404 U.S. 941, 92 S.Ct. 285, 30 L.Ed.2d 255 (1971). Appellate review of an award of costs is limited to situations where it is shown the trial court abused its discretion. *In re Nissan Antitrust Litigation,* 577 F.2d 910 (5th Cir.), *cert. denied,* 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38 (1978).

Plaintiffs seek reimbursement for a wide variety of "costs" including: travel expenses, postage and telephone charges, compensation for paralegals, photocopying and photographic expenses, and expert witness fees. The "costs" contemplated under Rule 54(d) must be distinguished from "expenses" in general. While all costs are subsumed under the category of expenses, the reverse is not true. *Wright & Miller* § 2666. Rule 54(d) does not permit a district court to order the losing party to reim-

burse the prevailing party for every expense the latter has seen fit to incur. *Farmer v. Arabian American Oil Co., supra,* 379 U.S. at 235, 85 S.Ct. at 416. Indeed, the Supreme Court has commented that "the discretion given district judges to tax costs should be sparingly exercised with reference to expenses not specifically allowed by statute." *Id.*

■ Items properly taxable as costs are enumerated in 28 U.S.C. § 1920, which provides:

A judge or clerk of any court of the United States may tax as costs the following:

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

The only items for which plaintiffs seek reimbursement that fall within the purview of this statute are:

Filing fee ----------------------- $15.00
Marshal fee ---------------------- 23.60
Deposition ----------------------- 43.20
Transcripts ---------------------- 877.98
Photocopying -------------------- 1,729.84[7]

TOTAL $ 2,689.62

**7.** Although the statute does not expressly include photocopying expenses, such expenses are akin to "(3) fees and disbursements for printing ..." Costs for photostatic copies have been allowed in several cases. *See, e. g., Twentieth Century Fox Film Corp. v. Goldwyn,*

In addition to these statutorily authorized costs, the Court sees fit to allow reimbursement for the $5,632.70 paid to employ paralegals. Defendants have no reason to object to the requested reimbursement for paralegal assistance. The employment of such personnel operated to defray the amount of attorney's fees incurred by plaintiffs in that the paralegals performed work which, in their absence, would presumably have been performed by attorneys. The four paralegals employed by plaintiffs' counsel were compensated at the rate of $7.00 or less per hour whereas Mr. Lipman has been awarded $60 per hour for out-of-court work and Ms. Gray has been awarded $40 per hour.

The Court finds further that the following items are properly taxable against the defendants as costs:

Graphics ------------------------ $538.49
C D B G Documents ---------------- 17.55
Maps ---------------------------- 3.00
Blueprints ----------------------- 40.30
Graphics ------------------------ 270.40
Photographs --------------------- 10.40
Film ---------------------------- 22.07
Photographs --------------------- 12.59
Film ---------------------------- 36.17
Video Tape ---------------------- 1,800.00

TOTAL $2,750.97

These items were a necessary part of plaintiff's case. They aided the Court in reaching a proper resolution of all disputed issues. The gist of the complaint was that the quantity and quality of municipal services available in the black community were inferior to those available in the white community. In order to prove this, it was necessary to introduce visual evidence, documentary and otherwise, for purposes of analysis and comparison. There is support in the case law for allowing such items to be taxed as costs. *See, e. g., Mikel v. Kerr,* 499 F.2d 1178 (10th Cir. 1974) (maps, charts,

328 F.2d 190 (9th Cir.), *cert. denied,* 379 U.S. 880, 85 S.Ct. 143, 13 L.Ed.2d 87 (1964); *Hugney v. Consolidation Coal Co.,* 59 F.R.D. 258 (D.Pa.1973); *Sperry Rand Corp. v. A–T–O, Inc.,* 58 F.R.D. 132 (D.Va.1973).

photographs); *Esler v. Safeway Stores, Inc.*, 77 F.R.D. 479 (D.Mo.1978) (charts); *Stachon v. Hoxie*, 190 F.Supp. 185 (D.Mich. 1960) (photographs, maps); *Gotz v. Universal Products Co.*, 3 F.R.D. 153 (D.Del.1943) (motion pictures).

■ The final amount that the Court will allow to be taxed as costs is the expense incurred by plaintiffs in obtaining expert architectural and engineering services. The general rule is that a prevailing party is not entitled to recover as costs any amounts paid to expert witnesses in excess of the statutory per diem and mileage fees due to all witnesses. *Baum v. United States*, 432 F.2d 85 (5th Cir. 1970); *Gerber v. Stoltenberg*, 394 F.2d 179 (5th Cir. 1968).

An exception to this rule was announced by the Fifth Circuit Court of Appeals in *Jones v. Diamond*, 636 F.2d 1364 (5th Cir. 1981) (*en banc*). The court, after acknowledging the general rule that expert witness fees are not recoverable as costs, concluded that a different rule applies in civil rights litigation. The court relied upon the congressional manifestation of intent that "[i]f private citizens are to be able to assert their civil rights ... then citizens must have the opportunity to recover what it costs them to vindicate those rights in court." *Id.* at 1382, *quoting* S.Rep. No. 94–1011, 94th Cong., 2d Sess. 6, *reprinted in* [1976] U.S.Code Cong. & Ad. News, 5908, 5910.

The issues this Court was asked to resolve focused upon technical factual matters relating to various municipal services such as sewerage, storm water drainage and water distribution. Expert investigation and testimony was an essential component of plaintiffs' case. Consequently, the Court will allow plaintiffs to recover the costs incurred in obtaining their experts.

■ The requested cost reimbursement for postage, telephone and travel expenses will be denied. Postage and telephone charges are expenses incurred incidental to the trial itself. As such, they are ordinarily non-taxable. *See, e. g., Department of Highways v. McWilliams Dredging Co.*, 10 F.R.D. 107 (D.La.1950), *aff'd*, 187 F.2d 61 (5th Cir. 1951) (postage); *Wahl v. Carrier Manufacturing Co.*, 511 F.2d 209 (7th Cir. 1975) (postage and telephone); *City Bank of Honolulu v. Rivera Davila*, 438 F.2d 1367 (1st Cir. 1971) (telephone). Similarly, attorneys' travel expenses are generally not recoverable. *City Bank of Honolulu v. Rivera Davila, supra; Kiefel v. Las Vegas Hacienda, Inc.*, 404 F.2d 1163 (7th Cir.), *cert. denied*, 395 U.S. 908, 89 S.Ct. 1750, 23 L.Ed.2d 221 (1968); *Michigan Aluminum Foundry Co. v. Aluminum Co. of America*, 190 F. 903 (6th Cir. 1911).[8]

An order will be entered in accordance with the foregoing opinion.

---

**8.** *Cf. Hodge v. Seiler*, 558 F.2d 284 (5th Cir. 1977). The court held that expenses incurred in traveling to the place of trial "are in the nature of costs." *Id.* at 287. The court noted, however, that the statutory provision governing costs, 28 U.S.C. § 1920, provides only for "[f]ees and disbursements for ... *witnesses*." (Emphasis added). Taking cognizance of. the Supreme Court's admonition that district judges should avoid taxation of expenses not specifically mentioned by statute, the appellate court upheld the lower court's refusal to tax travel expenses against the losing party, stating:

> The denial of this element of costs may thus only be upset for abuse of discretion, with the preferred exercise of discretion being to exclude from an award of costs those items not specifically mentioned in the statute. *Id.*