**Sadie D. MORGADO, Plaintiff-Appellant, Cross-Appellee,**

v.

**BIRMINGHAM–JEFFERSON COUNTY CIVIL DEFENSE CORPS, et al., Defendants-Appellees, Cross-Appellants.**

No. 81–7282.

United States Court of Appeals, Eleventh Circuit.

June 10, 1983.

Rehearing and Rehearing En Banc Denied Aug. 25, 1983.

Susan Williams Reeves, Birmingham, Ala., for plaintiff-appellant, cross-appellee.

David Whiteside, Raymond P. Fitzpatrick, Jr., Johnston & Barton, Birmingham, Ala., for Joseph W. Curtin and Jefferson Cty. Personnel Bd.

John S. Foster, Bibb, Foster & Conwell, Herbert Jenkins, Jr., City Atty., Birmingham, Ala., for Thomas B. Pinson.

Before RONEY and CLARK, Circuit Judges, and TUTTLE, Senior Circuit Judge.

CLARK, Circuit Judge:

The parties in this case, which involves alleged violations of the Equal Pay Act of 1963 (29 U.S.C. sec. 206(d)) and Title VII of the Equal Employment Opportunity Act of 1972 (42 U.S.C. sec. 2000e *et seq.*), claim error in various aspects of the district court's opinion. The errors claimed can be divided into two groups: those which go to the matter of discrimination and those which go to the matter of attorney's fees.

## FACTS RELATING TO DISCRIMINATION CLAIMS

The Birmingham-Jefferson County Civil Defense Corps (the "Corps") is a joint agency of Jefferson County, Alabama, the City of Birmingham, Alabama, and other smaller jurisdictions within the county. For jobs within the Corps, the Jefferson County Personnel Board (the "Board") wrote the descriptions, recruited and screened applicants, and set salaries.

As an employee of the Corps, appellant Morgado initially performed the duties of Coordinator of Women's Activities; later, those of Activities Officer; and yet later, those of Training and Education Officer. Appellant was initially paid at the S–14 level and very shortly thereafter at the S–15 level. At the same time, other officers, all males, in positions that originally were open only to males, were being paid at higher grade levels. Specifically, the Administrative Officer, Shelter Officer, and Communications Officer were being paid at the S–18 level. The Assistant Shelter Officer, another male, was paid at the same level as appellant. Appellant received higher evaluations than the Corps' other employees.

When the position of Director of the Corps became vacant in January 1976, appellant Morgado and others applied. The Civil Defense Council first offered the position to a male candidate who later declined. In the absence of a permanent director, appellant Morgado served as Acting Director for about five months. During this period of five months, appellant was paid at the rate designated for her previous position. In May 1976, appellant was appointed as permanent Director of the Corps.

At various times from 1965 through 1974, appellant Morgado requested that the Jefferson County Personnel Board increase her pay commensurate with the pay received by men performing similar duties. Her requests, supported by the Corps' Director, who supervised her work, were refused by the Board, which had sole authority in increasing pay.

## THE DECISION OF THE DISTRICT COURT AS TO THE DISCRIMINATION CLAIMS

Appellant originally brought suit on April 12, 1974, alleging sex discrimination in violation of 42 U.S.C. sec. 1983. On October 10, 1975, she amended her complaint to allege violations of Title VII of the Civil

Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972, 42 U.S.C. sec. 2000e *et seq.,* and the Equal Pay Act of 1963, as amended, 29 U.S.C. sec. 206(d).

The trial court found a violation of Title VII and the Equal Pay Act. Specifically, the court found that the positions of Training and Education Officer (appellant's position), Shelter Officer, and Assistant Shelter Officer were substantially equal jobs involving substantially equal work under Section 206(d) of the Equal Pay Act. The court also found that the jobs of Administrative Officer and Radiological Officer were sufficiently different from that of appellant that they were not to be counted as equal to appellant's job in the meaning of Section 206. The court found that the Equal Pay Act's exception for differences in pay based upon a merit system, 29 U.S.C. sec. 206(d)(1), did not apply. The court instead found that the Corps offered several jobs that were essentially all entry-level positions; that a set of written job descriptions stating specific levels of pay does not necessarily constitute a merit system.

The trial court made an award against the Corps and the co-chairmen of the Birmingham-Jefferson County Civil Defense Mayors' Advisory Council. This award, approximately $5,000, consisted of the amount of actual underpayment of wages for the period from March 24, 1973 (the date on which Title VII came into effect as to public agencies with employees of a number less than twenty-five, like the Corps), until May 12, 1976, when appellant was appointed Director of the Corps. This amount was measured by the difference between S–18, the level of pay received by the male Shelter Officer doing work similar to appellant's, and S–15, the level of pay received by appellant. The further part of the award, $3,500, consisted of liquidated damages against the Personnel Board for an amount equal to that portion of the underpayment from May 1, 1974, to May 12, 1976.

The trial court held that the Corps was not liable for liquidated damages on the ground that the Corps had underpaid Mor-

gado because the Corps was prohibited from increasing her pay by virtue of state law and Personnel Board regulations. The trial court concluded that the Personnel Board was not liable for back pay as a matter of law because appellant's salary was not paid by the Board, but merely controlled by it. The court further held that, although appellant performed the duties of Director while serving for five months as Acting Director, the refusal to pay her the salary of Director was not based on sex discrimination.

## ISSUES RELATING TO DISCRIMINATION CLAIMS

The issues on appeal are (1) whether the evidence of discrimination was sufficient; (2) whether the Corps was entitled to the affirmative defense that the pay differential was made pursuant to a merit system or factor other than sex; (3) whether the failure to pay appellant the salary of the Director of the Corps, while she served as the Corps' Acting Director, constituted a violation of the Equal Pay Act; (4) whether the Personnel Board is subject to the liquidated damages provisions of the Equal Pay Act; (5) whether the Corps escapes liability if the Board comes within the definition of "employment agency," 42 U.S.C. sec. 2000e(c), and whether the Board should have joint liability with the Corps for back pay; and (6) whether cross-appellant Thomas Gloor is liable in an official capacity.

(1) Whether the Evidence of Discrimination was Sufficient.

Cross-appellants challenge the district court's finding that there was discrimination against appellant on the basis of sex. They assert that cross-appellee failed to supply any evidence showing that the differential between cross-appellee's pay and that of the male Shelter Officer was based on sex, and thus failed to make a prima facie case.

■ A prima facie case of violation of the Act is established when it is shown "that an employer pays different wages to employees of opposite sex 'for equal work on jobs the performance of which requires

equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Corning Glass Works v. Brennan,* 417 U.S. 188, 196, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1, 10 (1974). *See Katz v. School Dist. of Clayton, Missouri,* 557 F.2d 153, 156 (8th Cir.1977).

The district court found that the appellant did work substantially equal to that of the Shelter Officer, a male, on a job requiring skill, effort, and responsibility substantially equal to the skill, effort, and responsibility required of the Shelter Officer, and yet was paid at the S–15 level, while the Shelter Officer was paid at the S–18 level.

■ In finding that the jobs of appellant and the male Shelter Officer were substantially equal, the district court determined that, as time had progressed, original distinctions between positions at the Corps had become less clear; certain staff positions had begun to resemble one another. The officers assisted one another in the execution of duties: drafting of monthly reports, program proposals, emergency plans, and the execution of those proposals and plans. A Duty Officer was appointed from among the entire staff on a weekly basis. The district court discerned a policy of training more than one person to perform a given job, so that staff officers would be versatile in the event of temporary absences of other officers as well as in the event of disaster or emergency. From these facts, the trial court found that the jobs of appellant and the male Shelter Officer were substantially equal, although he was paid at a higher rate.

■ Under Rule 52, Fed.R.Civ.P., the findings of fact of a district court in a Title VII action are weighed against the clearly erroneous standard. *Pullman-Standard v. Swint,* 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982). Under this standard, the findings of fact of a district court are not to be rejected unless the reviewing court is left with the definite and firm impression that a mistake has been made. *Watson v. National Linen Service,* 686 F.2d 877 (11th Cir.1982); *Wright v. Western Electric Co.,* 664 F.2d 959 (5th Cir.1981). Employing this standard, we affirm the district court's finding as to the equality of the jobs of appellant and the Shelter Officer.

(2) Whether the Corps was Entitled to the Affirmative Defense that the Pay Differential was Made Pursuant to a Merit System or Factor Other Than Sex.

■ Both the Equal Pay Act, 29 U.S.C. sec. 206(d)(1)(ii), and Title VII, 42 U.S.C. sec. 2000e–2(h), provide an exception to an employer's liability for discrimination in pay, if the differential is made pursuant to a merit system.

In arguing that the exception applies, cross-appellants cite testimony in which all parties employ the term "merit system." Cross-appellants note 29 C.F.R. sec. 800.144 (1981) which states, "Formal or written systems or plans may, of course, provide better evidence of the actual factors which provide a basis for the wage differential," and they then note that jobs offered by the Corps had written descriptions. They note time studies, evaluations, and reviews of the Corps' positions by Personnel Board employees and by independent consulting firms. The district court did not view these written job descriptions as being other than bona fide; the court saw in the descriptions no intention to discriminate. Nonetheless, the district court concluded that the simple fact of the existence of written job descriptions, no matter how methodically compiled, which state the various jobs' pay, did not constitute a merit system—did not justify the Shelter Officer's receiving pay higher than appellant's. The district court found that the Corps offered several essentially entry-level positions that did not lead to better work with better pay. It is a reasonable conclusion that a written set of job descriptions, regularly evaluated, is not a "merit system," if it has been found that the set of positions described present no means or order—"system"—of advancement or reward for merit.

The section of the Equal Pay Act which provides for a merit system exception also separately provides an exception for a dif-

ferential in payment "based on any other factor other than sex." 29 U.S.C. sec. 206(d)(1)(iv). In addition to asserting the merit system exception, cross-appellants argue that the fact that the Assistant Shelter Officer, a male, was paid at the same level as cross-appellee, coupled with the finding that his position was substantially equal to that of cross-appellee, proves that the pay differential between cross-appellee and the Shelter Officer, which the district court found discriminatory, properly fits within the exception for differentials based on factors other than sex.

The facts necessary to establish that a wage differential has a basis in a factor other than sex are peculiarly within the knowledge of the employer. 29 C.F.R. sec. 800.141(a). If he relies on the exception, he will be expected to show the necessary facts. *Id.*[1] Furthermore, the requirements for such an exception are not met unless the factor of sex provides no part of the basis for the wage differential. 29 C.F.R. sec. 800.142. Apart from asserting the merit system exception, which this court in the preceding text has determined does not apply, cross-appellants have not even named this factor, which must be other than sex. Nor have they demonstrated that the factor of sex provides no part of the basis for the wage differential.

(3) Whether the Failure to Pay Appellant the Salary of the Director of the Corps, While She Served as the Corps' Acting Director, Constituted a Violation of the Equal Pay Act.

█ The district court held that the failure to pay appellant the Director's salary during her service as Acting Director was not an equal pay violation. The court so held on the basis of evidence of the treatment of her male predecessor, who had also served as an Acting Director, before ultimately becoming Director. Both appellant and her predecessor received similar treat-

ment; neither received an increase in salary during his or her time as Acting Director. The district court did not find that the selection of a man, who declined his offer on March 1, prior to the selection of appellant, was the result of discrimination. Employing the clearly erroneous standard, we accept the district court's findings on this issue.

(4) Whether the Personnel Board is Subject to the Liquidated Damages Provisions of the Equal Pay Act.

█ The Personnel Board contends that the liquidated damages provisions of the Equal Pay Act are punitive and contends further that punitive damages cannot be applied against governmental entities like the Personnel Board. The Equal Pay Act specifically provides for the liquidated damages which cross-appellants refer to as punitive:

> Any employer who violates the provisions of Section 206 or Section 207 of this Title shall be liable to the employee or employees in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

29 U.S.C. sec. 216(b). Thus, the statute itself allows expressly for damages that are more than compensatory. The district court has properly applied this law to the Personnel Board. To support its contention, the Board cites *City of Newport v. Fact Concerts,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981), in which the Supreme Court held that punitive damages against a municipality could not be awarded under 42 U.S.C. sec. 1983. However, that case is easily distinguished from the present one because of the differences between section 1983 and the Equal Pay Act. Section 1983 does not address liquidated damages expressly, as does the Equal Pay Act, 29

---

**1.** While 29 U.S.C. sec. 206(d) does not give the Secretary of Labor authority to promulgate binding regulations, his interpretation of the statute is entitled to great deference when it does not contradict the intent of Congress.

*Griggs v. Duke Power Co.,* 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158. *See Brennan v. Prince William Hospital,* 503 F.2d 282 n. 5 (4th Cir.1974).

U.S.C. sec. 216(b); moreover, the Supreme Court concluded that there was not even evidence in the legislative history of section 1983 to suggest that Congress, in enacting that provision, had intended the possibility of such damages.

(5) Whether the Corps Escapes Liability if the Board Comes Within the Definition of "Employment Agency," 42 U.S.C. sec. 2000e(c), and Whether the Board Should Have Joint Liability with the Corps for Back Pay.

The Corps contends that it should not be held liable to the appellant for back pay. First, the Corps notes, and the district court found, that it had consistently attempted to obtain a pay increase for appellant but that it had continued to underpay her because of the Board's continued prohibition of a salary increase and state law. The Corps argues further that the Board is an "employment agency" as defined in 42 U.S.C. sec. 2000e(c), citing *Dumas v. Town of Mount Vernon, Alabama, et al.,* 612 F.2d 974 (5th Cir.1980), in which a personnel board similar to the one in this case was found to come within the definition. The Corps then argues that since the Board is an "employment agency" and since the court found that the Corps had indeed sought to increase Morgado's pay, the Board is alone liable for sex discrimination as an "employment agency" under 42 U.S.C. 2000e–2(b), and under the Equal Pay Act (which does not define "employment agencies") as an "employer" (defined in 29 U.S.C. sec. 203(d)).

Appellant Morgado asserts that, whereas the district court held the Corps alone liable for back pay, both the Corps as well as the Board should have been held jointly liable.

The Board, wisely, does not enter the fray.

■ The district court recognized that the Corps paid appellant and recognized further that the Board, as yet another government entity, set that pay. The two entities are not independent; one is making a management or employment decision for the other. In view of this combination of Personnel Board and Corps, the district court concluded that since the Corps paid appellant, it was liable for her underpayment, and that since the Personnel Board had set the policy, it was liable for liquidated damages. Joint liability for back pay will not increase or decrease appellant's award. The court's apportionment, given the circumstances, is reasonable.

(6) Whether Cross-appellant Thomas Gloor is Liable in an Official Capacity.

Cross-appellant Thomas Gloor challenges the district court's assessment of damages against him in his official capacity as co-chairman of the Mayors' Advisory Council. Cross-appellant Gloor became President of the Jefferson County Commission in 1975, and, having been since reelected once, he was at the time of trial serving in that position. In 1975, the President of the Jefferson County Commission automatically became a member of the Mayors' Advisory Council and served as co-chairman of the Council with the Mayor of the City of Birmingham. Two previous mayors of Birmingham have been defendants in their official capacities in this case, but have been replaced by the present Mayor of Birmingham, Richard Arrington, Jr. The trial court assessed damages against Mayor Arrington because he presently occupies the office of chairman of the Mayors' Advisory Council. The trial court assessed damages against Gloor because the court found that Gloor is presently co-chairman of the Mayors' Advisory Council.

■ Gloor asserts that there is no evidence that he is currently co-chairman of the Mayors' Advisory Council. However, cross-appellant Gloor himself stated at trial, in response to the question, "Are you on the Council now?": "I think I am by position, but I haven't been to one of the meetings in years." (T. 470). Cross-appellant Gloor went on to answer further questions about the infrequency of his attendance at what were apparently infrequent meetings. (T. 471). These questions and answers, complete with emphasis added, are quoted by cross-appellant Gloor in his brief as follows:

Q. Do you know when the last one [meeting of the council] would have been that you attended?

A. No, I wouldn't even make a wild guess.

Q. Would it have been since Ms. Morgado was appointed Director of the Civil Defense Corps?

A. Oh, yes, because *we changed officers since then. It was earlier in her administration that I imagine would have been the last time....*

Cross-appellant does not elucidate the importance of the emphasized passage. This court is apparently asked to conclude that the part of the passage, "we changed officers," means that Gloor was no longer co-chairman. However, the district court's inference that because Gloor was still the President of the Jefferson County Commission and still on the Council, he was therefore still co-chairman, is not clearly erroneous. Holding the office of the mayor of Birmingham still leads automatically to holding the office of Chairman of the Council, and it is a reasonable inference that holding the office of President of the Jefferson County Commission still leads automatically to holding the office of co-chairman.

### ATTORNEY'S FEES

Appellant's counsel requested fees, costs, and expenses of $23,260.36. On March 26, 1981, the district court taxed to the defendants costs of $1,998.98 and attorney's fees of $8,750.00. Appellant challenges the district court's calculation of attorney's fees, which the district court set out in lengthy findings of fact and conclusions of law, addressing the twelve factors enunciated as the bases for making a fee determination in *Johnson v. Georgia Highway Express,* 488 F.2d 714 (5th Cir.1974).[2]

Appellant's counsel Ms. Reeves spent approximately 90 hours on the case through 1976. After 1976—primarily during January and February 1981, the months immediately preceding trial—Ms. Reeves spent 93 hours. In calculating the fee due Ms. Reeves through 1976, the district court reduced the figure of 90 hours by 15 hours which "related to work on matters on which Plaintiff prevailed and which really did not contribute to the issues on which the Plaintiff prevailed." Apparently, the court was referring to appellant's failures in urging that, as Acting Director, she should have been paid the Director's salary and that, otherwise, she should have been paid at a grade level even higher than the one the district court eventually employed in calculating the award.

Further, in calculating the fee due Ms. Reeves for her work after 1976, the court reduced the 93-hour figure by one-third, stating:

There is no real breakdown provided to the Court concerning the relative amount of time spent on matters that related to the failure of Ms. Morgado to be appointed to director, or the delay in appointing her to that position, or the pay differential during the approximate six months that she held the title of acting director. I do, however, consider that the evidence and time spent in preparation for those matters are not here to be charged against the Defendants. The Defendants not only prevailed on that issue, but as I view it those matters which did take a substantial amount of time in trial, and I'm sure in preparation, really did not even contribute to the decision on which I did make an award in favor of Ms. Morgado.

Adding the number of hours spent preparing the fee application, the district court

---

**2.** Those twelve factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. 488 F.2d at 717–19.

decided that the total number of hours since 1976 to be remunerated would be approximately 75.

The rates by which the district court multiplied the two subtotals of hours were $50/hour for hours through 1976 and $65/hour for hours after 1976. At $50/hour, the district court did not compensate for delay or inflation in calculating the fee for hours expended through 1976.

The court referred to the factors of *Johnson v. Georgia Highway Express* in arriving at these two hourly rates. In considering the customary fee, the court noted the testimony of various lawyers as to their fees in similar cases. One lawyer testified that the hourly fee for complex, noncontingent litigation was $120; another, that $85 was reasonable for noncontingent work. A defense witness testified that he and his firm, in similar Title VII litigation, charged between $35/hour and $40/hour in 1975 and 1976, and between $50/hour and $60/hour in 1980. The court found this last evidence most persuasive as to what a noncontingent hourly rate should be. Further, the court apparently considered "its general knowledge obtained in other litigation involving attorney's fees," as well as testimony that the Personnel Board, for its defense, was charged $50/hour.

The court stated that the fee would be enhanced because appellant and her attorney had a contingency agreement. However, the court suggested that the degree of enhancement would be less in part because of the appellant's ability to pay, "which to some degree cuts down on the reason why the [attorney] would charge more on a contingency fee basis."

Finally, in stating the hourly rates at which it would calculate attorney's fees, the district court said that it would take into account the commonplace nature of the case.

Appellant challenges (1) the court's reduction of the hours remunerated; (2) the failure to consider inflation and delay in remunerating hours expended prior to 1977; (3) the court's characterization of the case as commonplace; and (4) the court's appar-

ent discounting of the contingency factor because appellant was employed during the litigation.

(1) Whether the Court Should Have Reduced the Hours Remunerated.

■ The district court should not have reduced the hours remunerated. The district court noted *Jones v. Diamond,* 636 F.2d 1364 (5th Cir.1981), in which the court stated:

In fixing the fee, the district court should be mindful that in complex civil rights litigation ... issues are overlapping and intertwined. *In order to represent their clients adequately, attorneys must explore every aspect of the case, develop all the evidence and present it to the court.* Time spent pursuing unsuccessful claims that were clearly without merit should be excluded. However, the mere fact that the litigants did not succeed in obtaining a judgment on all of the claims asserted does not mean that time spent pursuing these claims should be automatically disallowed. [citations omitted]. Instead the court must consider the relationship of the claims that resulted in judgment with the claims that were rejected and the contribution, if any, made to success by the investigation and prosecution of the entire case.

636 F.2d at 1382 (emphasis added). In a recent case, this court, citing *Jones v. Diamond,* stated, "The theory that fee applications should be dissected into 'winning' and 'losing' hours with the latter being non-reimbursable contradicts the law of this circuit." *Dowdell v. City of Apopka, Florida,* 698 F.2d 1181, 1187 (11th Cir.1983). In *Dowdell,* plaintiffs charged the City of Apopka and certain city officials with discrimination in the provision of seven municipal services: street paving and maintenance, storm water drainage, street lighting, fire protection, water distribution, sewerage facilities, and park and recreation facilities. After a preliminary finding by the Office of Revenue Sharing that the city illegally discriminated in provision of several of these services, an agreement was

reached on improvements in street lighting and fire protection, and the district court filed an order settling these claims. The case went to trial on the remaining five issues. The district court found intentional discrimination in the provision of street paving, water distribution, and storm drainage. Having ordered relief, the court, by separate opinion, awarded reasonable attorney's fees. Although the district court had found no intentional discrimination in provision of sewerage facilities and park and recreation facilities, it nonetheless awarded fees for time spent on all the claims. The court reasoned:

> Plaintiffs' claims, although distinct in the sense that the claims related to different types of services, were intertwined in that they constituted logical, integrated parts of a single action challenging discrimination in the provision of municipal services.

*Dowdell v. City of Apopka, Fla.,* 521 F.Supp. 297 (M.D.Fla.1981). In affirming this reasoning, this court said, "The interrelationship of the seven contested services is patently apparent." 698 F.2d at 1189.

In the present case, the district court reduced the submitted post-1976 hours by one-third, because that one-third was the court's estimate of time Ms. Reeves spent "on matters related to the failure of Ms. Morgado to be appointed director, or the delay in appointing her to that position, or the pay differential during the time she held the position of Acting Director." Appellant did not prevail on these matters, which the court said "really did not even contribute to the decision on which I did make an award in favor of Ms. Morgado." The court said, a few paragraphs earlier, in reducing the submitted pre-1977 hours, that such matters "really did not contribute to the issues on which the Plaintiff prevailed."

The district court neglected the "contribution ... made to success by the investigation and prosecution of the entire case." *Jones v. Diamond,* 636 F.2d at 1382. This court in *Jones v. Diamond* stated that adequate representation required that "attorneys ... explore every aspect of the case,

develop all the evidence and present it to the court." 636 F.2d at 1382. Attorney Reeves was obliged to investigate and prosecute the matters relating to Ms. Morgado's promotion to the Directorship. Such matters were too closely related to matters on which appellant prevailed: If Ms. Morgado was discriminated against by the Board and Corps in one facet of her career, there was, on Attorney Reeves part, reason to consider that there had been discrimination throughout that career. Indeed, although we have found that the district court was not clearly erroneous in its decision of the Acting Director issue, there was testimony suggesting that at least some officials in a position to participate in deciding Ms. Morgado's promotion to Director, as well as her compensation, were hostile to that promotion. Plaintiff's "claims were intertwined in that they constituted logical integrated parts of a single action challenging discrimination in the provision of municipal services." *Jones v. Diamond,* 636 F.2d at 1382. Just as the lawyers in *Dowdell* had to examine all seven municipal services for discrimination, in the present case Ms. Reeves had to examine all facets of Ms. Morgado's career for discrimination. As Judge Scott wrote, "None of the claims were clearly meritless. Conditioning an award of attorneys' fees upon the ability of the attorney to portend the ultimate outcome of the case could result in many meritorious claims never being prosecuted." *Dowdell,* 521 F.Supp. at 301.

(2) Whether the Court Should Have Accounted for Inflation and Delay in Calculating the Rate for Hours Through 1976.

The district court awarded $50/hour for hours through 1976 and $65/hour for hours after 1976. Thus, at $50/hour, the district court failed to compensate for delay or inflation in calculating the fee for hours expended through 1976. The court heard testimony as to fees that lawyers were charging for similar cases in 1976 and earlier years, and then set the fee in part on the basis of that testimony. Presumably, those lawyers were receiving such fees when they were charging them, not

five years later. Other circuits have endorsed compensation for delay in payment of fees. *Environmental Defense Fund,* 672 F.2d 42, 60 (D.C.Cir.1982), citing *Copeland v. Marshall,* 641 F.2d 880, 893 (D.C.Cir. 1980); *Bonner v. Coughlin,* 657 F.2d 931, 937 (7th Cir.1981); *Lindy Bros. Builders v. Am. Radiator, etc.,* 540 F.2d 102, 117 (3rd Cir.1976). The court in *Copeland v. Marshall* stated:

> Court-awarded fees normally are received long after the legal services are rendered. That delay can present cash-flow problems for the attorneys. In any event, payment today for services rendered long in the past deprives the eventual recipient of the value of the use of the money in the meantime, which use, particularly in an inflationary era, is valuable.

641 F.2d at 893. Thus, a percentage adjustment to reflect the delay in receipt of payment is appropriate. To the extent, if any, the delay is attributable to the plaintiff, such adjustment would not be appropriate. *See Johnson v. University of Alabama,* 706 F.2d 1205 at 1210 (11th Cir.1983).

(3) Whether the Court Properly Characterized the Case as Commonplace.

 The second factor enunciated in *Johnson v. Georgia Highway Express* is the novelty and difficulty of the questions a case presents. The district court, apparently after some reflection, concluded that the present case was not a difficult one. The plaintiff was an individual and not a class; the positions with which hers was to be compared were few in number. The district court said in part:

> Plaintiff herself for the period of time involved in pretrial preparation was essentially in charge of the agency, and therefore making much of the information available to the Plaintiff to the extent the agency had it.
>
> As an equal pay claim, the question that was before the Court was really just to compare ... the Plaintiff's job during a period of several years with the work performed by essentially five other people, and those persons essentially were persons who held those jobs throughout

the entire period of time and with whom the Plaintiff had personal contact.

The district court's consideration of this factor does not constitute a clear abuse of discretion. *Welch v. University of Texas,* 659 F.2d 531, 535 (5th Cir.1981).

(4) Whether the District Court Properly Considered the Contingency Factor.

 The district court, in considering the contingency factor, said:

> I do think ... that some increment is due to be made on the contingency basis, even when it's voluntarily assumed. And in deciding what an appropriate hourly rate would be I have increased for the contingency.
>
> It is perhaps of some note that although it is contingent, and was contingent, the Plaintiff did evaluate the case as being one which there was a likelihood of success. Of course, counsel are frequently disappointed in their estimates of these matters, but, in terms of the contingency aspects I do think that the difficulty of obtaining information and the expectations as to the amount of information that may have to be discovered are of some significance in determining how much contingency and risk there is. And this is a case in which the Plaintiff was still employed, was employed at a relatively high rate for the agency to be sued, and later became the director of that agency, which to some degree cuts down on the reason why the persons would charge more on a contingency fee basis.

The district court's statements as to this factor do not reflect a clear abuse of discretion. In *Johnson v. Georgia Highway Express,* this court quoted *Clark v. American Marine Corp.,* 320 F.Supp. 709 (E.D.La. 1970), *aff'd,* 437 F.2d 959 (5th Cir.1971), as follows:

> Whether or not [a plaintiff] agreed to pay a fee and in what amount is not decisive. Conceivably, a litigant might agree to pay his counsel a fixed dollar fee. This might be even more than the fee eventually allowed by the court. Or he might agree to pay his lawyer a percentage

contingent fee that would be greater than the fee the court might ultimately set. Such arrangements should not determine the court's decision. The criterion for the court is not what the parties agreed but what is reasonable.

The district court's consideration of the contingency agreement in this case is not unreasonable.

The judgment of the district court is AFFIRMED in part, REVERSED in part, and REMANDED.