**Classie N. GLOVER Plaintiff,**

v.

**KINDERCARE LEARNING CENTERS, INC., Defendant.**

**No. CIV.A. 97–A–352–N.**

United States District Court, M.D. Alabama, Northern Division.

Sept. 29, 1997.

Pay Act, 29 U.S.C. § 206 et seq. ("EPA"). The Plaintiff sought compensatory and punitive damages, and an injunction. She alleged that defendants had discriminated against her by paying males more for doing the same job as her, and that the defendants had retaliated against her for filing a complaint with the EEOC.

Defendants have moved for summary judgment on the grounds that (1) Plaintiff cannot show a prima facie case of a violation of the EPA; or, in the alternative, even if Plaintiff has shown a prima facie case, Plaintiff has not shown evidence to rebut Defendant's proffered defenses; (2) Plaintiff cannot show a prima facie case that any pay disparity was in violation of Title VII; and, even if Plaintiff can, she cannot rebut Defendant's proffered legitimate reasons; and (3) Plaintiff cannot show underlying discrimination to support her claim of retaliation.

For the reasons discussed herein, Defendant's Motion for Summary Judgment is due to be DENIED.

## II. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. at 2553. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the non-moving party has failed to present evidence in support of some element of its case on

Joseph B. Lewis, Timothy A. Tyler, Montgomery, AL, for Plaintiff.

Alex L. Holtsford, Montgomery, AL, for Defendant.

## MEMORANDUM OPINION AND ORDER

ALBRITTON, District Judge.

### I. INTRODUCTION

This cause is before the court on a Motion for Summary Judgment filed by defendant KinderCare Learning Centers, Inc., ("KinderCare") on July 15, 1997. Classie N. Glover, the Plaintiff, filed this case on March 13, 1997. In her complaint, she alleges that the Defendant unlawfully discriminated against her on the basis of sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"), and the Equal

which it bears the ultimate burden of proof. *Id.* at 322–324, 106 S.Ct. at 2552–53.

If the movant succeeds in demonstrating the absence of a material issue of fact, the burden shifts to the non-movant to establish, with evidence beyond the pleadings, that a genuine issue material to the non-movant's case exists. *See Clark v. Coats & Clark Inc.,* 929 F.2d 604, 608 (11ᵗʰ Cir.1991); *see also* Fed.R.Civ.P. 56(e) ("When a motion for summary judgment is made and supported . . . an adverse party may not rest upon the mere allegations or denials of [his] pleading, but [his] response . . . must set forth specific facts showing that there is a genuine issue for trial.").

What is material is determined by the substantive law applicable to the case. *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute of material fact "is 'genuine'... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. at 2510 (1986). The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). It must present "affirmative evidence" of material factual conflicts to defeat a properly supported motion for summary judgment. *Anderson,* 477 U.S. at 257, 106 S.Ct. at 2514–15. If the non-movant's response consists of nothing more than conclusory allegations, the court must enter summary judgment for the movant. *See Peppers v. Coates,* 887 F.2d 1493 (11ᵗʰ Cir. 1989).

The evidence presented by the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14. After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

With these rules and principles of law in mind, the court will determine whether summary judgment is appropriate or whether there exist genuine issues of material fact that should properly proceed to trial for resolution.

### III. FACTS

The evidence submitted to the court, viewed in the light most favorable to the non-movant, establishes the following facts:

The Bank Reconciliation Department at KinderCare was having problems in the summer of 1994. *Collier Affidavit.* Because of this, a new person, Steve Wakefield, was placed in charge of the Department, and given authority to hire some more employees. *Id.* The Plaintiff, Classie Nicole Glover was selected as one of the new employees. *Id.*

Glover was hired as a Bank Reconciliation assistant on September 27, 1994. *Glover Affid.* KinderCare has described her position as follows:

> Bank Reconciliation Assistant—Responsible for reconciling proportionate share of depository bank accounts. These accounts are either reconciled manually using a Lotus 123 spreadsheet or automated using Recon/Plus PC and are to be maintained in a neat and well organized manner. Individual will also follow up with responsible Kinder–Care or bank personnel on unreconciled items. Questionable transactions will be identified to supervisor. Reconciliation assistant will also be familiar with Lawson computer software in order to process inquiries, downloading files, and processing journal entries. [sic] Individual will also be required to distribute/file bank correspondence. Assistant will provide weekly status on accounts to supervisor and perform other duties as assigned.

*Employee Performance Review of Glover, Sept. 19, 1995.*[1] At the time she was hired,

---

1. Another description of the position states that "[t]his position will reconcile bank statements to general ledger system, identify, research and correct outstanding reconciling items. Desires 2 years work experience in a related field. Good computer skills (Lotus) are required. Accounting course work a plus." *Plaintiff's Exh. A.* Brantley testifies, consistent with this exhibit,

Glover did not have a college degree. *Collier Affid.* She did have, however, two years of accounting and banking experience. *Glover Affid.* Glover was started at $ 7.25 / hour. *Glover Affid.*[2]

Plaintiff's complaint centers on Kinder-Care's hiring of two male employees to do the same job as her at a higher rate of pay. *Collier Affid.* The two males started work about six months after Glover. *Glover Affid.* They were the first male Reconciliation Assistants hired by KinderCare. *Brantley Depo. 22:9–11.* It is undisputed that, after thirty days passed, these new male employees were making more per hour than Glover. It was decided by KinderCare that both Brantley and Hemdon would start at $7.00 / hour and have an opportunity to move to $8.00 / hour after 30 days, if they received a favorable review. *Id.* Brantley testified that he received the pay raise at the end of thirty days, to $8.00 / hour. *Brantley Depo. 20:9–13.*

Plaintiff insists that her duties were basically the same, if not greater, than those of the two males. *Glover Affidavit.* Brantley, in fact, testified that he was doing the same job as the Plaintiff, *Brantley Depo. 38:6–1 7,* and that neither his nor the Plaintiff's job description changed during the time that he was making $8.00 / hour. *Brantley Depo. 20:14–21.* Plaintiff states in addition that she was required to undertake the same duties as the males, along with some duties which the males were not, such as monthly journal entries, and problem-solving for centers. *Glover Affid.* Brantley counters that he fielded calls from centers from day one, but notes that he sometimes had to ask others, such as Glover, for help. *Brantley Depo. 20:22—21:22.* Glover also states that she was given more difficult accounts to recon-

cile, and had to help train the new male employees. *Glover Affid.* Brantley himself testified that Glover, along with two others, helped train him. *Brantley Depo. at 16* These additional duties allegedly affected Glover's productivity. *Glover Affid.*[3]

KinderCare asserts that the two males were more qualified than Glover. Both Brantley and Herndon had college degrees and some experience. Specifically, Brantley had a degree in Corporate Finance and Investment Management from the University of Alabama. *Brantley Resume.* He also had part-time experience in reconciliation with Harco. *Brantley Depo. at 12.* He was hired after an interview with Jeff Traver and Steve Wakefield. *Brantley Depo. 18:18—19:3.* Timothy Herndon received a degree in Accounting from Auburn University in December 1994. *Herndon Resume.* His only experience in accounting had been work with the Auburn Small Business Development Center during one quarter of college. The work was performed to determine if it was feasible to operate a fitness center in the town. *Herndon Resume.*

Defendant also asserts that the males received more pay because of a merit system. An affidavit is submitted by Jeff Traver to the effect that Glover was evaluated and her pay was "based primarily upon objective productivity." *Jeff Traver Affid.* Glover's work was said to be below the other employees in terms of "quantity and quality." *Id.* Traver states that Brantley and Hemdon could reconcile the accounts of three centers per hour, whereas Plaintiff could reconcile only 2 centers per hour. *Id.*

In 1995, KinderCare reviewed Plaintiff's performance in the position of Bank Reconciliation Assistant, and found it to be less than glowing. *Id.* The review states that

---

that he does not recall that the position required a college diploma. *Brantley Depo. 9:15–17.* The job is also described using the exact same language in the employee reviews of Keith Brantley and Tim Herndon, submitted by the Defendant.

2. Glover ultimately moved to a position as Systems Accounting Coordinator with KinderCare, making $ 7.83 / hour. *Id.*

3. Glover also states that a supervisor, Jeff Traver, constantly scrutinized her work. *Glover Affid.*

He stood over her while she worked, and would ask her questions about her progress, and the speed of her progress. *Id.* She never saw the supervisor do this to the two males. *Id.* The court is not sure if this evidence was meant to show why her production levels were lower. In addition, Glover states that her productivity was affected by a period when she worked at home while on disability. *Id.* It is not apparent to the court why this fact is relevant to her claim.

Glover could "handle routine reconciliations without supervision," but "ha[d] difficulty reconciling more complex accounts." *Employee Performance Review, Sept. 19, 1995.* The review notes further that Glover needed to be "more proactive and self confident," that Glover's "work output [wa]s below expectations," and that Glover showed "minimal initiative towards completing her work." *Id.* On the positive side, the Review noted that Glover had a "pleasant disposition," that she "contributed to office moral," that she "communicate[d] well with co-workers," and that she had "good customer service skills." *Id.* Overall, the report rated Glover the third highest rating of five, describing her as "consistently meet[ing] job criteria." *Id.* The Review noted that she needed to be "more focused and energetic" and that she needed to improve her "dedication" in order to improve her "productivity and creativity." *Id.* The review goes on to state that Glover was "second most senior," but was "one of the least productive" and was "assigned easier accounts because of her inability to handle" more complex ones. *Id.*

A comparison of Brantley, Glover and Herndon's work productivity during 10 different weeks from March to September 1995, is part of the 1995 review. *Id.* Glover outperformed Herndon during only three of the weeks selected. *Id.* She outperformed Brantley during only one week. *Id.* The review states further that Glover should in the future average reconciling the accounts of at least 2.5 centers per hour, and that her performance would be monitored weekly. *Id.*

Glover's performance apparently took a turn for the better after this review. A memorandum of a conference on October 19, 1995, submitted by the Defendant, states that Glover was "obtaining [her] goal" and was "almost caught-up." Another memorandum sent to Glover on October 20, stated that there would be another meeting in 6 months and that the supervisors would keep Glover informed of her performance at least once a month. The memorandum goes on to state that Glover's "desire to receive the

same number of accounts with the same degree of difficulty has been meant" [sic].

A memorandum from Jeff Traver to Glover on January 1, 1996, shows further improvement. The memorandum states that Traver and Glover had met on two occasions to discuss Glover's performance. The report notes Traver's pleasure with Glover's improvement. Glover was performing 4.33 reconciliations per hour, had shown increased initiative, and was becoming a "stronger team participant."

By 1996, Plaintiff was receiving glowing evaluations, being rated the same as the two males.[4] She received the second highest rating (out of five) for "frequently exceeding most job criteria" on July 23, 1996. *Employee Performance Review, July 23, 1996 ("1996 Glover Review.").* This review states that Glover had done a "good job" and was a "definite asset in helping clean out the backlog" in Reconciliation. *Id.* The review also spoke of her accuracy, neatness, and care with her work, and of her "tremendous improvements in productivity." *Id.* The report notes further that she "consistantly [sic] exceeded productivity requirements" and did so "without supervision." *Id.* She was said to have a very "positive attitude," a "friendly personality," a "professional relationship" with others, and good communication skills. *Id.* The report summed up by noting that Glover was "dedicated," made a "100% effort," possessed a "strong work ethic[ ]," and could "be counted on to produce timely and accurate work." *Id.* The report lists no weaknesses. Attached to the report was a listing of production levels for four weeks in early 1996, which shows the Plaintiff performing a similar if not greater number of reconciliations, for a similar if not greater number of banks, as Brantley or Herndon.

KinderCare asserts, nevertheless, that both Brantley and Herndon were better employees than Glover. They submit reviews of the two males performed one week after Plaintiff's 1996 review. These reviews contain no written comments as does Plaintiff's evaluation, merely a rating by numbers. Brantley received a "2" for frequently ex-

---

4. Defendant did not submit this review of Glover as part of its evidence. The 1996 review was submitted by Plaintiff, but its accuracy and authenticity remains unquestioned.

ceeding most job criteria when evaluated on July 30, 1996. *Employee Performance Review, July 30, 1996.* Herndon also received a "2" for frequently exceeding most job criteria when evaluated on the same date. *Employee Performance Review, July 30, 1996.* These ratings are the same as the ones received by Glover.

KinderCare also asserts that these workers required a different pay rate because of the temporary nature of their positions. *Collier Affid.* KinderCare represents that the "rate of pay was based on the practical experience, credentials, and negotiated terms for each individual." *Id.* Collier states that the different payment plan was used to "attract good temporary employees with college degrees and accounting experience, and to hopefully maintain their employment until the end of the project." *Id.*

Plaintiff asserts that after she filed an EEOC claim regarding the disparity in pay, KinderCare retaliated against her. *Glover Affid.* As evidence of this, she submits that she interviewed and was qualified for two promotions, but was denied both. *Id.* She also states that she was put in the position of Bank Reconciliator, but while being trained for this job, Traver changed the title of the position and the requirements. *Id.* Specifically, Traver made it mandatory that the person possess a college degree, thereby disqualifying Plaintiff from the position. *Id.*

A response of the defendants to an interrogatory states that Plaintiff applied too late for the Food Program position. *Response by Defendant to Plaintiff's First Consolidated Request for Discovery.* Also, the response states that the person hired for the Systems Accounting Coordinator position was more qualified in that he had "extensive experience dealing with computer systems and accounting." *Id.*

Both Brantley and Herndon were eventually made permanent employees at KinderCare. *Collier Affid.* Plaintiff states that Collier told her that Herndon and Brantley were initially hired as permanent employees. *Glover Affid.* KinderCare asserts, however, that Herndon was not made a permanent employee in January 1996, when he moved into a position as an accountant. *Collier Affid.* He is now a salaried employee, with his pay based upon performance. *Collier Affid.* KinderCare further asserts that Brantley was not made a permanent employee until October 23, 1995. *Collier Affid.* Brantley received a raise to $9.00 / hour on March 11, 1996. *Collier Affid.* Brantley resigned from KinderCare for other employment on November 8, 1996. *Id.*

## IV. *DISCUSSION*

Plaintiff's complaint presents three counts. The first two concern the difference in pay between herself and the two male employees, Brantley and Herndon. The third is a claim of retaliation for filing a complaint with the EEOC.

### a. Disparate Wage Claims

Plaintiff claims that Defendant KinderCare discriminated against her by paying her a wage lower than that paid to male employees in the same position. Both the EPA and Title VII provide redress in a case where an employee of one sex is paid less than the opposite sex for doing the same job. *Miranda,* 975 F.2d at 1527. Plaintiff has plead both statutes, and both parties have made arguments thereon.

The plaintiff's burdens as well as the legal analysis differ under the laws. EPA requires an employee to prove a "fairly strict standard ... that she performed substantially similar work for less pay." When this burden is satisfied, the burden of proof shifts to the employer to establish one of certain enumerated defenses. *Id.* at 1526. Title VII by contrast requires a more "relaxed standard of similarity" between the jobs, and does not shift any burdens of proof to the defendant. However, under Title VII, the "plaintiff has the burden of proving an intent to discriminate on the basis of sex," which she does not have under the EPA. *Id.*

**The EPA.** In order to "survive a motion for summary judgment, a plaintiff must at least establish the necessary elements of his or her cause of action and demonstrate the presence of genuine issues of material fact." *Miranda v. B & B Cash Grocery*

*Store,* 975 F.2d 1518, 1532 (11th Cir.1992). The Plaintiff's required burden of a prima facie violation of the Equal Pay Act consists of a showing that she has been making less money than a male worker who does substantially the same work in a similar position. *Miranda,* 975 F.2d at 1526 (11th Cir.1992). Glover has met this burden. She has shown that employees of a different sex, employed in the same job in the same department, were making more than her. The evidence is uncontradicted that there was a period in which the male hires, Brantley and Herndon, were making $ 8.00 / hour and Glover was making less. The evidence is also uncontradicted that Brantley eventually began making $9.00 hour in the same position (although it is not clear that Glover was still in this position).[5]

■ Defendant challenges Glover's prima facie case, contesting the assertion that Glover and the males were performing the same job. Specifically, Defendant asserts that Glover cannot show a prima facie case because she was a permanent hire, and Brantley and Herndon were temporary hires. Defendant places too much emphasis on the mere words "permanent" and "temporary," however. Plaintiff is not required by the EPA to prove that the jobs are "identical" in all respects. *Miranda,* 975 F.2d at 1533. Rather, an appropriate inquiry focuses on whether the "skill, effort and responsibility required in the performance of the jobs are 'substantially equal.'" *Id.* The focus in a prima facie case is on the "primary duties of each job." *Id.*

The evidence is uncontradicted that all three employees were performing the same primary duties. Plaintiff has presented adequate evidence of this, and such evidence remains uncontradicted. Brantley even said that he was doing the same job as Glover. If anything, Glover has presented evidence that she was performing the same duties as the two males, along with some greater duties.

■ Defendant also protests that Plaintiff may not meet her burden of proving a prima facie case because she has not shown that she was actually making less money. In other words, Defendant asserts that Plaintiff was receiving more pay because she, unlike the temporary employees, received benefits.[6] This assertion is made only in the brief of Defendant's lawyer and is not supported by evidence. The court is left, therefore, with uncontradicted evidence that Plaintiff was making less per hour less than the males. Defendant is not entitled to summary judgment on these facts.

■ Just showing that a prima facie case exists is not sufficient to find liability under the EPA, however. Sometimes differences in pay exist for good reasons, and the EPA respects certain such reasons. A wage disparity does not violate the EPA if it results from "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) any factor other than sex." *Irby v. Bittick,* 44 F.3d 949, 954 (11th Cir.1995), quoting 29 U.S.C. § 206(d)(1). The Eleventh Circuit has found factors other than sex to "include 'unique characteristics of the same job; ... an individual's experience, training or ability; or ... special exigent circumstances connected with the business." *Irby,* 44 F.3d at 955, quoting *Glenn v. General Motors Corp.,* 841 F.2d 1567, 1571 (11th Cir.), cert. den. 488 U.S. 948, 109 S.Ct. 378, 102 L.Ed.2d 367 (1988). It is the employer's burden to prove one of these defenses; if the employer fails to satisfy this burden, the plaintiff wins. *Irby,* 44 F.3d at 954. This is a "heavy" burden, because, in effect, the Defendant is required to "show that the factor of sex provided no basis for the wage differential." *Id.,* quoting *Mulhall v. Advance Security,*

---

5. If a male succeeds a female in a job, and the male is paid more for no legitimate reason, this may state a violation of the Equal Pay Act. *See* 29 CFR § 1620.13(b)(4)

6. "Under the EPA, the term 'wages' generally includes all payments made to [or on behalf of] an employee as remuneration for employment.... Fringe benefits are deemed to be re-

muneration for employment." 29 CFR §§ 1620.10–1620.11. *See Sowers v. Kemira. Inc.,* 701 F.Supp. 809, 822 (S.D.Ga.1988), where the district court granted judgment to the Defendant on a wage discrimination claim after trial. The defendant proved as an affirmative defense that, among other things, Plaintiff's salary was supplemented by benefits.

*Inc.,* 19 F.3d 586, 590 (11th Cir.1994), cert. den. 513 U.S. 919, 115 S.Ct. 298, 130 L.Ed.2d 212 (1994).

■ Defendant KinderCare has asserted three reasons to support the wage disparity. These are: (1) the qualifications of the males paid more than Glover, (2) the performance of the males paid more than Glover, and (3) the circumstance of the temporary employment of the two males. Each of these proffered justifications will be considered, at least to some degree. The Eleventh Circuit has said that "so long as subjective business justifications ... are not overly subjective so as to render them incapable of being rebutted, they are legitimate factors to be considered." *Schwartz v. Florida Bd. of Regents,* 954 F.2d 620, 623 (11th Cir.1991). If KinderCare successfully raises an affirmative defense, the burden shifts to Glover to prove that the asserted reason is merely a pretext for sex discrimination. *Irby,* 44 F.3d at 954. If Glover "is able to create the inference of pretext, there is an issue which should be reserved for trial." *Id.* In the present case, Glover creates an inference of pretext as to all defenses raised by the Defendant.

KinderCare could successfully raise an affirmative defense if it "proves that [it] relied on prior salary and experience in setting a 'new' employee's salary." *Irby,* 44 F.3d at 955. Defendant has raised this argument, asserting that the males hired were more qualified because of their educational and work experiences. Plaintiff has, however, offered rebuttal evidence of pretext.

Both Brantley and Herndon had college degrees, and Glover did not. The importance of this evidence is weakened, however, given that no college degree was required for the job. *Plaintiff's Exh. A.* In addition, this evidence is offset by KinderCare's stated de-

sire to have someone with work experience. *Id.* Glover had work experience while the males did not; both of the males were fresh out of school. Furthermore, Glover had six months of experience in the particular job before the males ever started work. Defendant has not shown that there is no material issue of fact raised as to the relative qualifications of Glover and the two males.

■ Defendant also argues that the males deserved more because of their superior performance on the job. It is not clear to this court whether Defendant is asserting a "merit system" defense or simply a "factor other than sex" defense. Neither defense is proven by the Defendant's submissions made to this court; in the least both are rebutted by Plaintiff's evidence.[7] Relevant evidence submitted includes employee performance reviews of Glover, and like reviews of the two defendants. Defendant tried to show a disparity in performance by contrasting a 1995 review of Glover, which contains many negative comments, with 1996 reviews of the two males, which conclude that they "frequently exceed[ed] most job criteria." This is an unfair comparison, however, and does not justify the disparity at issue. A more accurate comparison would be 1995 reviews of all three employees, which are not provided, or the 1996 reviews of all three employees. The 1996 reviews, in fact, give all three employees the same rating. Glover even receives many glowing comments which the two males do not. In any case, even if Defendant had submitted appropriate comparisons, Defendant has not shown how, or if, it uses employee reviews to determine salaries. Defendant also has not shown how the higher salaries received by Brantley and Herndon (which began one month after they started work), could be justified by their 1996 perfor-

---

7. Defendant may not, in fact, have even successfully raised a merit system defense. This defense requires a defendant to clear a significant hurdle. The defendant must prove that it has a " 'system' which presents a means or order of advancement or reward for merit." *Brock v. Georgia Southwestern Coll.,* 765 F.2d 1026, 1036 (11th Cir. 1985). Systems which are "informal," or based on "ad hoc," "subjective," or "personal" judgments, cannot qualify as such. *Id.* Furthermore, this defense is "strictly construed against the employer" so that the exception does not

"swallow the rule." *Hodgson v. Brookhaven Gen. Hosp.,* 436 F.2d 719, 726 (5th Cir.1970), appeal after remand 470 F.2d 729 (5th Cir.1972). *See also Morgado v. Birmingham–Jefferson County Civil Def. Corps,* 706 F.2d 1184, 1188 (11th Cir. 1983) (determining that "written set of job descriptions, regularly evaluated," did not constitute a merit system), cert. den. 464 U.S. 1045, 104 S.Ct. 715, 79 L.Ed.2d 178 (1984). Where a system is not determined to qualify as a merit system, the court may still treat it as a factor other than sex. *See Brock,* 765 F.2d at 1036.

mance reviews (which were performed a year and a half after they began work). In sum, movant has not shown that there is not a material issue of fact with regard to this affirmative defense.

Defendant also raises an additional defense, that the disparity was justified by the unusual circumstances of the temporary jobs.[8] This argument is unsupported except by the statement of a KinderCare employee. That employee states that the pay was an "effort to attract good temporary employees with college degrees and accounting experience, and to hopefully maintain their employment until the completion of the project." *Collier Affid.* Defendant has not done enough to show that there is no material issue of fact as to whether temporary employees must be paid more.

Defendant's assertion appears to raise little more than an argument that the 'market made us do it.' This justification has troubled courts before. *See generally Glenn v. General Motors* Corp., 841 F.2d 1567, 1570–71 (11th Cir.1988) (rejecting affirmative defense that company hired women at lower salaries, and maintained those salaries through transfers, because women would accept less). Certainly the market compels businesses to do many things. Perhaps it even compels them to pay temporary employees in Reconciliation $ 8.00 / hour. Nevertheless, even if the market compels KinderCare to pay the new employees $ 8.00 / hour, the law will not allow Glover to be paid less for the same job.

"[C]ertain unusual, higher than normal, wage rates" are sometimes asserted as a successful defense under the theory of "red-circl[ing]." *Mulhall,* 19 F.3d at 595. This applies in situations such as where employees are transferred to temporary, less-demanding positions, "in order to have [the employee] available again when needed in the former job." *Id.* The Eleventh Circuit has specifically rejected this theory, however, when offered to support higher salaries for "new employees brought into the organization to fill" positions comparable to the Plain-

tiff's. *Id.* at 596. Red-circling was determined to be valid only when it supports higher wages which were "maintained (not created) for a valid reason." *Id.* Higher salaries for Brantley and Hemdon were "created" for some reason, at the start of their employment, not "maintained" through some transfer or other mechanism. The defense of red-circling would not allow this practice, either.

■ **Title VII.** Wage disparity claims may also be brought under Title VII. Plaintiff has done so using circumstantial evidence. In order to proceed on a circumstantial evidence claim under Title VII, the plaintiff must prove by a preponderance of the evidence a prima facie case of discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Texas Dep't of Comm. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981). A plaintiff establishes a prima facie case of a Title VII violation based on a disparity of wages by "showing that she occupies a job similar to that of higher paid males." *Meeks,* 15 F.3d 1013.

The evidence offered for the EPA claim is the same as offered for the Title VII claim, and, as such will not be fully recounted. Suffice it to say, the discussion above shows that it is undisputed that there were no increased duties for Brantley and Hemdon to justify the increased wages. Differences in duties are what matter for the purposes of Plaintiff's proof of a prima facie case, not any differences in the duration of the employment. Plaintiff has shown a prima facie case for a Title VII wage disparity claim.

Proof of a prima facie case merely creates a presumption, however, only a required conclusion in the absence of explanation "that the employer unlawfully discriminated against the employee." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993). A Defendant may rebut this presumption by articulating a legitimate, non-discriminatory rea-

---

**8.** This argument is made both to contest Plaintiff's prima facie case, and to offer an affirmative defense.

son for its treatment of the plaintiff. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093–94. This is only a burden of production, not persuasion, *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1094–94; and as such is easily satisfied. *Howard v. B.P. Oil Co.,* 32 F.3d 520, 524 (11th Cir.1994). The defendant must produce admissible evidence which, if believed by the trier of fact, would support a conclusion that the employment action was not the product of unlawful discrimination. *St. Mary's Honor Ctr.,* 509 U.S. at 506–08, 113 S.Ct. at 2747.

Once a defendant meets his burden of producing a legitimate non-discriminatory reason for the employment decision, the presumption raised by the prima facie case is rebutted and drops from the case. *Hairston v. Gainesville Sun Publishing Co.,* 9 F.3d 913, 919 (11th Cir.1993). The case may continue, however, if the plaintiff presents some evidence, which may include the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision. *Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir.1997). The plaintiff may seek to demonstrate that the proffered reason was not the true reason for the employment decision "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095; *Combs,* 106 F.3d at 1534.

Because it is relatively easy for employees to establish a prima facie case and it is similarly simple for employers under Title VII to articulate some nondiscriminatory reason for the employment decision, most disparate treatment cases turn on the plaintiff's rebuttal, the plaintiff's ability to produce comparative, statistical or direct evidence of discriminatory motive. *See Miles v. M.N.C.Corp.,* 750 F.2d 867, 870–75 (11th Cir.

1985). Comparative evidence is that which shows that employees who were not members of the protected class and were treated differently. *Id.*

"Because the plaintiff bears the burden of establishing pretext [for discrimination], [s]he must present 'significantly probative' evidence on the issue to avoid summary judgment." *Young v. General Foods Corp.,* 840 F.2d 825, 829 (11th Cir.1988), cert. den. 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–25, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (U.S.1986)). "Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where [a defendant] has offered extensive evidence of legitimate, non-discriminatory reasons for its actions." *Young,* 840 F.2d at 830.

As discussed above, Defendants have proffered evidence of three legitimate reasons for its actions.[9] The evidence offered, which was discussed above, satisfies the Defendant's light burden of production under Title VII. In addition, however, Plaintiff has produced evidence, also discussed above, to rebut these proffered reasons, and to show that the real reason was discriminatory. There is not undisputed evidence to show that the males were more qualified; that the males outperformed Plaintiff; that their salary was based on performance; or that there was some difference in duties which supports a higher wage. A genuine issue of material fact exists as to whether Defendants intentionally discriminated against Plaintiff by paying her a smaller wage than that received by males in a similar position. Summary judgment on the Title VII wage disparity claim is due to be DENIED.

**b. Retaliation**

Plaintiff has also filed a count based on allegations that the Defendant unlawfully retaliated against her for filing an EEOC claim. Defendant seeks summary judgment on the grounds that "Plaintiff's claim for

---

**9.** The defenses which are made available by the Equal Pay Act have been statutorily incorporated into Title VII for wage disparity claims. *Miranda,* 975 F.2d at 1528.

retaliation or constructive eviction [sic] fails because Plaintiff has not proven discriminatory conduct on the part of KinderCare." The court finds it somewhat difficult to follow Defendant's challenge. Most of Defendant's discussion regarding this motion veers off by construing Plaintiff's claim as a constructive discharge claim, which it is not. Construing Defendant's argument generously, it appears to be based on an idea that Plaintiff's retaliation claim cannot stand unless Plaintiff's underlying claim of discrimination is proved. This is not a correct statement of the law.

Title VII allows an employee to recover from an employer if the employer retaliates against the employee for opposing discrimination. 42 U.S.C. § 2000e–3(a). In order to establish a claim, the employee needs to show that "(1) she engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action." *Reynolds v. CSX Transp., Inc.*, 115 F.3d 860, 868 (11th Cir.1997). There is no requirement that the employee show that her underlying claim of discrimination, the one which she was retaliated against for raising, is valid as well. *Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir.1997) ("To recover for retaliation, the plaintiff 'need not prove the underlying claim of discrimination which led to [his] protest;' however, the plaintiff must have had a reasonable good faith belief that the discrimination existed"). Defendant does not contest Plaintiff's retaliation claim on any other grounds. Defendant's motion for summary judgment on this claim is due to be DENIED.

## V. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendant's Motion for Summary Judgment is due to be, and hereby is, DENIED.